UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 06-20081-CR-GOLD

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RICARDO MAURICIO BERNAL PALACIOS,

    Defendant.
_____/

# DEFENDANT RICARDO MAURICIO BERNAL PALACIOS' OBJECTION TO PRESENTENCE INVESTIGATIVE REPORT

DEFENDANT, RICARDO MAURICIO BERNAL PALACIOS, through his undersigned counsel, objects to the Presentence Investigation Report (hereafter PSI), both as, to the facts set forth and the guidelines computation.

I.    FACTS IN DISPUTE

The facts set forth in the PSI regarding the offense conduct are the facts provided by the Assistant United States Attorney to the probation officer. (See Paragraph 8 of the PSI). These alleged facts are stated in paragraphs 9 through 27 of the PSI.

Defendant RICARDO MAURICIO BERNAL PALACIOS does not dispute that he became involved in with the laundering of drug proceeds utilizing primarily a Casa de Cambio in Mexico known as Casa de Cambio Ribadeo. The amount of funds the Defendant laundered is not disputed. This Defendant has admitted the amount of money laundered, as well as its connection to drugs. His acceptance of his conduct and the plea agreement he entered into places him at a base offense level of 26, (based upon the amount of money) with a 6 level

offense characteristic increase since the money laundered was related to drugs. The defense does not dispute the facts that support these guideline calculations.

Facts are further alleged by the by the government and set forth in the PSI as "The Offense Conduct" to provide an evidentiary predicate for (1) the assessment a 4 level increase for being "in the business of laundering funds" and (2) a four level increase as an organizer of criminal activity involving five or more participants. U.S.S.G. §§ 2S1.1(b)(1)(A) and 3B1.1 (a), respectively.

The facts supporting the above enhancements are disputed. The Defendant was nothing more than a business owner who, in addition to operating a construction business, succumbed to the destructive allure of making easier money by involvement with the drug business. He is not a leader of any "large scale" organization. He does not own or control a Casa de Cambio and he has no sophisticated banking relationships.

This Defendant had what then seemed like "opportunities" as an ex-patriot Colombian businessman in Mexico City, to meet persons and make connections with the owner of a Casa de Cambio and Colombian narcotics violators who were using Mexico as a transshipment route to Spain. He earned money by making introductions and connections.

It seems likely that various Colombian traffickers using Mexico have or are part of organizations. The owner of the Casa de Cambio may have an "organization." Defendant Ricardo Mauricio Bernal Palacios has no organization. He works with his brother Juan, and his brother in law, Camilo Ortiz, who are indicted in this case.

Defendant Ricardo Mauricio Bernal Palacios has no organization in Spain or anywhere else. He has never owned or controlled any Casa de Cambio. Contrary to paragraph 10 of the PSI this Defendant was simply a well connected facilitator who was overcome by greed in seeing others around him making large sums of money. Greed overcame his moral conscience, which led to his current circumstances.

2

The Defendant understands that, contrary to facts asserted in paragraph 11 of the PSI, it was CS1 who contacted his brother Juan, to see of Juan could sell U.S. dollars to CS1. CS1 offered to pay a premium for dollars and would repay the total amount owed in Pesos in Bogota, Colombia, where CS1 exported goods from the freight forwarding business he owned in the United States. The brothers had no "organization" so Defendant's brother-in-law Camilo, agreed to receive funds. When the Casa de Cambio owner told Defendant Mauricio Bernal who was to receive the funds in Bogota, Mauricio would notify Defendant Ortiz of the Casa owner's instructions.

As pointed out in the PSI, the Defendants were recorded speaking to CS1. No recording supports the inaccurate allegation in the offense conduct portion of the PSI that Mauricio Bernal owned or controlled any Casa de Cambio in Mexico, Curacao, or anywhere else.

It is also not accurate that the CS2 was in contact with "other members of the Bernal organization" in Spain, as alleged in PSI paragraph 19. A Colombian trafficker requested help from Bernal to move money from Spain to Colombia. If Bernal had a large, ongoing "organization" in Spain he would have developed the means to move the money derived by such "organization" to Colombia. Instead, the Defendant asked CS2 to go to Spain to get the money.

Contrary to allegations in the PSI in paragraphs 19-23, no money or drugs belonging to Defendant Bernal were seized in Spain. The government's characterization of a "Bernal Organization" in Spain is fiction. Contrary to the assertion in PSI paragraph 24, the transcript of the conversation referenced shows that the money seized and the warehouse searched in Spain did not belong to Bernal. The characterization of the conversation between CS1 and Defendant Bernal is inaccurate as will be seen by examining the actual transcript.

Paragraph 25 of the PSI identifies Anton Perez. Hs is the owner of the Casa de Cambio and is now deceased. All the corporate and banking records show he is the owner. No evidence supports the contention that Defendant Bernal is the owner. It is Bernal's friendship with the

3

owner that gave him the "ability" to be involved in the money laundering as charged. Information about Defendant Bernal owning the Casa de Cambio, attributed to CS2 is, inaccurate and contrary to evidence produced by the government in discovery.

Paragraph 26 is disputed. The Defendant Bernal never had fast boats that were seized. He never participated in the operations and or transportation side of the drug business. He is before the Court solely as a launderer of money in this case. The government has agreed to dismiss the drug count at the time of sentencing. This allegation regarding "fast boats" is false. CS1 never had any such conversation with Mauricio Bernal, who was not even in Mexico at the time CS1 claims they spoke there about fast boats.

The informant in this case kept about $500,000.00 of the proceeds they were supposed to "launder" and pay in Pesos in Colombia. This caused great difficulty for the Defendant. The informant signed a promissory note and payment agreement but thereafter never paid anything. As to these funds the laundering conspiracy was attempted but never completed.

The Defendant objects to the PSI assessment of his role in paragraph 28. The funds he is responsible for, i.e., $2,517,127.03, were all laundered with the assistance of CS1 and CS2, together with the DEA. He owned neither a Casa de Cambio, a drug organization or any other organization. Given the opportunity he sought to expand his usefulness to those who were in the business when CS1 offered the chance to earn commissions. He and his brother earned a 2% commission which they split for about $25,000.00 each, from this conspiracy. CS1 was to earn 3%. This conspiracy consists of two brothers and a brother-in-law who cooperated together to earn money form laundering these proceeds. Mr. Bernal knew all the wrong people, which placed him in a position to face these enormous consequences at sentencing, but he had no organization, just contacts.

4

The true facts are not so grand as suggested by the government. Mr. Bernal is accepting that he broke the law as charged in the money laundering counts but he is not the big operator the confidential informants claim him to be.

## II. OJECTIONS TO GUIDLINE CALCULATIONS

A. Defendant was not in the business of laundering funds.

All funds for which the Defendant is held accountable are for money laundered or attempted to be laundered, with DEA informants. No specific facts have been offered in the PSI as to other laundering transactions without these informants' participation.

Application note 4(A) and (B) to U.S.S.G. §§ 2S1.1 provides guidance in determining whether a Defendant should be enhanced for being in the business of laundering funds. Paragraph 4(A) asks the Court to consider "the totality of the circumstances." Paragraph 4 (B) provides factors to consider.

Since the Defendant's conduct begins and ends with the informants' availability the Defendant should not be seen as meeting factors (B) (i) through (iii). Defendant relied upon Francisco Anton Perez, who owned the Casa de Cambio to locate sources of dollars. Defendant has another contact with a Colombian who has money in Spain. He could only attempt to launder that money through an informant, CS2. Clearly this is not regular business conduct. His attempt to launder was with an informant. DEA controlled the frequency of these laundering activities.

As to 4(B) (iv) the amount of revenue, i.e., $50,000.00 split by two Defendants, is not a "substantial amount." As to Paragraph 4(B)(v) this Defendant has no prior convictions. As to Paragraph 4 (B) (vi) Defendant's conversations were recorded, albeit illegally under Mexican law. No recorded conversation includes statements of the Defendant that he engaged in conduct identified in paragraph 4(B) (i) through (iv) of the Application Note.

5

B. Role in the Offense

The government has overstated the facts in an attempt to obtain an enhancement against this Defendant for his role in the offense. The factors that a sentencing court considers to decide if this enhancement is applicable are: "(1) exercise of decision-making authority, (2) nature of participation in the commission of the offense, (3) recruitment of accomplices, (4) claimed right to a larger share of the fruits of the crime, (5) degree of participation in planning or organizing the offense, (6) nature and scope of the illegal activity, and (7) degree of control and authority exercised over others. U.S. v. Ramirez, 426 F. 3rd 1344, 1355 (11th Cir. 2005) and Application Note 4 to U.S.S.G. §§ 3B1.1.

In determining role enhancements the government bears the burden of proving by a preponderance of the evidence that the Defendant had an aggravating role in the offense. U.S. v. Alred, 144 F.3rd 1216 (11th Cir. 2003); U.S. v. Yeager, 331 F. 3rd 1216 (11th Cir. 2003)

The facts in this case show that neither Bernal brother controlled or exercised authority over the other. When Francisco Anton Perez would inform Mauricio Bernal who Camilo Ortiz should pay in Bogota, Defendant Mauricio Bernal communicated that to Defendant Ortiz. Bernal exercised no control. He relayed the information. He has no authority to decide or change who Ortiz paid.

Those who bought pesos for dollars are not controlled by Defendant Bernal. The buyer-seller relationship does not play a part in assessing role since neither controls or has authority over the other. U.S. v. Witek, 61 F. 3rd 819, 822-24 (11th Cir. 1955). The term "organizer" "implies a person who exercises some degree of managerial authority, rather than one who merely coordinates various players." U.S. v. Lewis, 476 F 3rd 369, 376 (5th Cir. 2007), citing U.S. v. Lindsey, 123 F. 3rd 978, 986-87 (7th Cir. (1997); U.S. v. Williams-Davis, 90 F. 3rd 490, 508-09 (D.C. Cir. 1996); U.S. v. Witele, 61 F. 3rd 819, 822-24 (11th Cir. 1995); U.S. v. Jermone, 942 F. 2n 1328, 1331 (9th Cir. 1991).

6

The facts in this case do not support Defendant Bernal receiving any enhancements for role in the offense. He participated in unlawful money laundering activity but not as an organizer, leader, manager or supervisor. The factors set forth in application note 4 are not present under the facts present in this case.

### III.   THE CONSPIRACY IS INCOMPLETE AS TO APPROXIMATLEY $500,000.00

The informant receives approximately $500.000.00 in dollars which he never remitted back in Pesos in Colombia, contrary to the "agreement" which formed the basis of the conspiracy. Defendant's offense level is calculated on the amount of dollars sent to the informant. The money never returned in pesos should require the application of U.S.S.G. §§ 2x1.1 and Defendant should receive a 3 level reduction.

The amount of money Defendant was responsible for under his plea agreement $2,517,127.03 as provided in paragraph 29 of the PSI. In calculating the base offense level for money laundering the level is increased by 18 levels where the amount laundered exceeds $2,500,000.00 U.S.S.G. §§ 2B1.1 (b) (1) and § 251.1(a)(2). This Defendant reaches that level by only $17,127.03.

Since nearly $500,000.00 was delivered to the informant, who then took no steps to send or launder the money back to Colombia, the Defendants were unable to give the money to its intended recipient. The Defendant therefore never "completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense..." U.S.S.G. § 2X1.1 (3) (A), since the informant never completed all the acts necessary for the successful completion of the substantive offense.

In U.S. v. Puche, 350 F.3rd 1137 (11th Cir. 2003) the Court granted a three level reduction under U.S.S.G. § 2X1.1 where six million dollars of a $6.7 million dollar conspiracy were discussed but never delivered. The Court found completeness only to the $7 million and that the

7

Defendants had "not completed or were not close to completing all the acts they believed necessary to laundering the six million dollars in future transactions." U.S. v. Puche, 350 F. 3rd at 1156.

U.S. v. Watkins 457 F.3rd 1277 (11th Cir. 2007) grants a remand to consider a 2x1.1 reduction where Defendant solicited a criminal act directing that the district court determine whether "the acts taken by the undercover agent were sufficient to demonstrate to Watkins [the Defendant] that the undercover agent was about to complete the offense." 477 F. 3 rd at 1281.

## CONCLUSION

Defendant requests the Court to sustain his objections to the guideline calculations and disputed facts, in the PSI. Defendant intends to request additional relief in the form of a variance by separate pleading.

WHEREFOR, the Defendant files his objections to the PSI.

Respectfully submitted,

s/Martin L. Roth
Martin L. Roth, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was E-filed with the Clerk of Court and the U.S. Attorney's Office, using CM/ECF this 25th day of February, 2008.

MARTIN L. ROTH, P.A.
One East Broward Boulevard,
Suite 700
Ft. Lauderdale, FL 33301
Tele: (954) 745-7697
Fax: (954) 745-7698

By:   s/Martin L. Roth
Martin L. Roth, Esquire
FL. Bar No: 265004

8