UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 06-20081-CR-GOLD

UNITED STATES OF AMERICA,

    *Plaintiff*,

vs.

RICARDO MAURICIO BERNAL PALACIOS,

    *Defendant*.

_____/

## DEFENDANT MAURICIO BERNAL'S REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

The DEFENDANT, RICARDO MAURICIO BERNAL PALACIOS, has disputed the enhancements sought by the government for (1) being in the business of laundering funds, and (2) for leader organizer. The Defendant has disputed the facts contained in the PSI, which purport to support the enhancements. The PSI acknowledges that the facts it contains were provided by the prosecutor and not otherwise determined by the probation officer.

The government's response to the Defendant's objections to the PSI attempts to provide a basis for the government's fact assertions by reference to various transcripts that are attached as exhibits. Defendant Mauricio Bernal does not dispute the authenticity of the transcripts but will show that the government has mischaracterized their meaning.

### I. DEFENDANT WAS NOT IN THE BUSINESS OF LAUNDERING

The government argues that per the indictment, the Defendant conspired to launder drug proceeds from 2002 until his arrest in February 2006. However, no laundering activity is alleged other than that activity which was facilitated by the DEA through its confidential informants.

After law enforcement provided the Defendant with the ability to send dollars to a U.S. source, CS1, who could provide the dollar equivalent in pesos in Bogotá, Colombia, the Defendant took the bait and participated in the indicted conspiracy. Since the government provided the means, both in the U.S. and in Colombia, the Defendant needed only to send dollars to CS1 and receive

pesos in Colombia. CS1, according to his story would use dollars to buy computers in the United States, would send the merchandise to Colombia, resell it for pesos, and pay back the dollars received with the equivalent sum of pesos.

Before meeting CS1 there is no proof before the Court that Defendant Mauricio Bernal was in the business of money laundering.

The ability bestowed upon the Defendant to launder dollars in Mexico for pesos in Colombia made the Defendant useful to traffickers. When given the "opportunity" to move money from Spain the Defendant, knowing of no reliable money courier, again engaged the services of a confidential informant.

The government refers to recorded conversations Defendant Mauricio Bernal has with the Confidential Source #2 in the response to Defendant's objections to the PSI. The government suggests that money in Spain that was seized belonged to Defendant Bernal. The transcripts show that it belonged not to Defendant Bernal but to some other individual. In telling the informant about the seizures Bernal stated …

…and they called me, "Look brother, look at the people." I said, "what people? Your people, asshole."

Exhibit 2, government's response to Defendant's objections to PSI, p. 14.

The organization that Bernal could move money for still had Euros in Spain. He tells the C-I that "we" have that to move indicating that the recent raids did not mean that Bernal and the C-I would not have further work to do. (*Ex 2, 9-16, 20*)

The government again confuses the meaning of the recorded conversations trying to show that Defendant Bernal was involved in laundering without the help of a C-I. They quote Bernal as saying "…with the American account, we moved a fucking lot. Uh, millions…of dollars. I never had a problem." (*Ex. 2 at 54. Page 4 of Government's Response to Defendant's Objections to PSI*) That conversation refers to the indicted conduct, *i.e.*, the money laundered with the help of CS-1.

Every transaction, every iota of relevant conduct, involved the activity and enabling by a law enforcement cooperating individual. This is criminal conduct for which the Defendant has accepted responsibility. It is not indicative of "being in the business," when every transaction is with the assistance of a C-I.

The government argues as a fallback position, that even if the facts do not support the enhancement for "being in the business" the Defendant should be enhanced under U.S.S.G. § 2S1.1 (b)(2)(B) since the indictment charges a 18 U.S.C. § 1956 offense, and Defendant's conduct involved "sophisticated laundering" under § 2S1.1 (b)(3).

Since U.S.S.G. § 2S1.1 (b)(1) applies, and the Defendant does not dispute that the laundered funds were drug proceeds, the lesser enhancement for a Section 1956 violation would not also apply. Application of the 6 level enhancement assumes a drug-related § 1956 violation. 18 U.S.C. § 1956 requires that one knows the money involved represents the proceeds of some unlawful activity. § 2S1.1 (b)(1) advises a 6 level enhancement where the activity involves drugs, firearms, national security, or sexual exploitation of a minor. Any other money laundering from some other unlawful activity merits 2 levels under 2S1.1 (b)(2) (B). Both sections would not apply.

The sophisticated laundering provision does not apply to the facts present in this case. This Defendant had a connection, Anton Perez who owned casas de cambios, and who had the wherewithal to wire money in dollars to CS1 in Miami. Anton Perez needed U.S. sources who receive dollars. This Defendant made the connection between CS1 and Mr. Perez, and earned a commission on what turned out to be approximately $2.5 million dollars laundered. The DEA created the plan to change dollars to merchandise to pesos. This Defendant had access to use a casa de cambio to wire the money.

The factors for assessing "Sophistication" are in Application Note 5 of U.S.S.G. § 2S1.1 . Absent from the facts in this case are the creation of fictitious entities or shell corporations. There is no layering of transactions to disguise the source of the funds other than the scheme supplied by law enforcement. Money was not wired to and then back from offshore accounts. Money was sent from where the casa de cambio was located to CS1 in Miami. Factors thought to show sophistication are not present in this case.

## II.   MAURICIO BERNAL IS NOT A LEADER/ORGANIZER

The government has mischaracterized the evidence in its argument that Mauricio Bernal is a leader/organizer under U.S.S.G. § 3B1.1 (a). The conversations that are exhibits to the government's response to Defendant's objections to the PSI reflect activity among co-co-conspirators who are equals. The government's characterization that the conversations show the Defendant to be "dominant" in his relationship with the other Co-Defendants is inaccurate. When

these transcripts are examined an impartial reading will not support the government's characterization.

The governments uses a bizarre logic in attempting to refute the fact that Mauricio Bernal merely conveyed the information supplied by Anton Perez to Camilo Ortiz regarding to whom Mr. Ortiz should remit the pesos delivered to him by CS1's associate. They claim that as a "final flaw" to the defense argument that the movement of money was controlled by Anton Perez, that the last transfer of money occurred "after Anton Perez's death." They are wrong on their dates. Their own pleading acknowledges Mr. Perez was kidnapped October 10, 2005 and found dead 5 days later. (*See footnote 2 to Government's Response to Defendant's Objections to PSI*). The September 5, 2005 transfer was the last transfer. (*i.e., one month prior to Mr. Perez's death*)

The facts are clear that after Anton Perez's death no more funds were sent to CS1. This is one of the most telling facts of the case. The Defendant had a method to send money, Mr. Perez, and a source in the United States, the confidential source supplied by law enforcement. There is no extensive organization that exists for Mr. Bernal. He sought to service an organization with drug related assets in Spain. He tried to be of service to persons with organizations. But he himself was not an organizer or leader. The organization in Spain was disrupted by law enforcement. When the informant wanted more work Bernal explained that money and boats were seized and tried to convey that everything was over for him.

The taped evidence and common sense, contrary to the government's assertion, support the defense position regarding role and being "in the business" enhancements.

### III. FACTS IN DISPUTE

The government contends that their informant did not retain approximately $500,000.00 in laundered proceeds. He did and signed a promissory note, Defendant's Exhibit 1 hereto, and a schedule of payments, Defendant's Exhibit 2, to account for the sum he received but never delivered. He is associated in business with CS1, Defendant's Exhibit 3 and 4.

The government disputes the Defendant's assertion "that Juan Bernal contacted the CS", but the government's own proffer asserts that the confidential source "was approached by Juan Bernal" albeit "on behalf of Mauricio Bernal." This is really a dispute over semantics.

The government previously claimed that Mauricio Bernal owned or controlled the casas de cambio. They have not reasserted that claim or disputed the Defendant's objection to that assertion.

To be clear, the Defendant provides Defendant's Exhibit 5, the casas de cambio signature cards and Defendant's Exhibit 6, e-mails from bank officials for the casas de cambio acknowledging Anton Perez as the owner.

## CONCLUSION

The government has grossly overstated the culpability of Mauricio Bernal in terms of his role and degree of involvement as a money launder. He wanted to get involved, earn money and he took the bait. He wanted to succeed as a launder but he was apprehended. He is criminally culpable but only for his actual conduct.

**WHEREFORE**, DEFENDANT files his reply to the government's response to Defendant's objections to the PSI.

Respectfully submitted,

s/Martin L. Roth
Martin L. Roth, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was E- filed to all parties of record, using CM/ECF this 7th day of May 2008.

**MARTIN L. ROTH, P.A.**
One East Broward Boulevard,
Suite 700
Ft. Lauderdale, FL 33301
Tele: (954) 745-7697
Fax: (954) 745-7698

By:   s/Martin L. Roth
Martin L. Roth, Esquire
FL. Bar No: 265004

## DEFENDANT MAURICIO BERNAL'S EXHIBIT LIST

1. Defendant's Exhibit 1    Promissory Note (Provided by Government Discovery);

2. Defendant's Exhibit 2    Schedule of Payments;

3. Defendant's Exhibit 3    Case No: G1-04-0337; Transcript dated November 17, 2005, (identifying Orlando Medina; Page 45 & 46 of 91);

4. Defendant's Exhibit 4    International Global Trading, LLC., Articles of Incorporation. (IGT);

5. Defendant's Exhibit 5    Casas de Cambio, Signature Cards;

6. Defendant's Exhibit 6    Union Bank of California, e-mails.